United States District Court
District of Massachusetts

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | |
| ) | Criminal Action No. |
| **ROBERTO CARMENATTY,** ) | 13-10190-NMG |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Roberto Carmenatty ("Carmenatty" or "defendant") has been indicted on a single count for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In October, 2010, Carmenatty, a convicted felon, allegedly knowingly possessed a Kel-Tec .32 caliber pistol within the District of Massachusetts. Pending before the Court is defendant's motion to suppress certain post-arrest statements that he made to authorities. For the following reasons, the motion will be denied.

I. **Motion to Suppress**

In December, 2014, Carmenatty filed the instant motion requesting that the Court suppress certain post-arrest statements. Defendant moves to suppress his statements on two independent grounds. First, he contends that those statements resulted from an unlawful search and arrest and thus should be

suppressed under the Fourth Amendment.  Second, he argues that the statements were made in response to custodial interrogation without Carmenatty having waived his Miranda rights and were therefore in contravention of the Fifth Amendment.  Defendant also requests an evidentiary hearing on the matter.

**A.   Background**

The statements which Carmenatty now seeks to suppress were the result of his arrest on December 7, 2011.  Carmenatty was arrested by Massachusetts State Police and Chelsea Police Officers on an outstanding state warrant from the Chelsea District Court for 2008 drug charges, although at the time of his arrest he was being investigated by federal authorities for illegal gun trafficking and possession.

Federal authorities sought to bring defendant in for questioning with respect to their gun investigation but could not locate him.  As a result, on December 6, 2011, an Assistant United States Attorney sought an order from this Court to authorize a pen register and tracing device on a cellular phone believed to be used by Carmenatty.  The application to the Court also sought, inter alia, the real-time GPS coordinates of the cellular phone.  The application stated that agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") were seeking to locate Carmenatty in connection with their gun trafficking investigation in which they had unsuccessfully

attempted to apprehend Carmenatty on the outstanding state arrest warrant.

United States Magistrate Judge Dein approved the request and the defendant was promptly located with the aid of the cellular phone GPS data. The following day, Carmenatty was arrested at the home of a friend in Chelsea, Massachusetts. Carmenatty contends that he had been temporarily staying at the location at the time of his arrest.

Carmenatty was then taken to the Chelsea Police station. At the time of his booking, he was orally advised of his Miranda rights by the booking officer and was later provided with a standardized Miranda form by the officer. Defendant signed the form but left it blank where it asked (1) "[d]o you understand these rights explained to you?" and (2) "[h]aving these rights in mind, do you wish to talk now?".

Carmenatty was subsequently taken to an interview room at the police station where he was met by two ATF special agents and a Chelsea Police detective. The two ATF agents explained that they were interested in speaking with Carmenatty about their firearms investigation. One of the agents clarified that, although defendant was under arrest pursuant to the outstanding state warrant related to the drug charges, they were interested only in his possible involvement with firearms.

The ATF agents were aware that Carmenatty had already been advised of his Miranda rights and had signed the Miranda warnings form. Nevertheless, one of the agents gave Carmenatty another set of oral Miranda warnings. Carmenatty then acknowledged that he understood his rights and began to speak with the agents. It was during that interview, which was not recorded, that Carmenatty made the incriminating statements he now seeks to suppress.

**B. Fourth Amendment Challenge**

First, Carmenatty moves to suppress the statements as the fruits of an allegedly illegal search and seizure.

**1. Legal Standard**

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. In the context of effectuating an arrest at a residence, the Fourth Amendment requires that the police need only an arrest warrant for the suspect and a reasonable belief that he resides at the subject residence. United States v. Werra, 638 F.3d 326, 336-37 (1st Cir. 2011) (citing Payton v. New York, 445 U.S. 573, 603 (1980)). The so-called Payton rule was designed to protect the physical integrity of the home. New York v. Harris, 495 U.S. 14, 17 (1990).

An arrest made in violation of Payton, however, does not require suppression of every statement made by the individual

4

thereafter. See United States v. Slaughter, 708 F.3d 1208, 1212 (11th Cir. 2013). So long as probable cause existed to arrest the individual, the exclusionary rule does not bar the use of a statement made by that individual outside of the residence even though the statement is taken after an unlawful arrest. Harris, 495 U.S. at 21. That is because suppressing the statement taken outside the residence would "not serve the purpose of the rule that made [the] arrest illegal." Id. at 20. As such, various courts have found that

> the presence of probable cause to arrest has proved dispositive when deciding whether the exclusionary rule applies to ... statements obtained after [an individual] is placed in custody.

Mosby v. Senkowski, 470 F.3d 515, 521 n.4 (2d Cir. 2006) (quoting United States v. Crawford, 372 F.3d 1048, 1056 (9th Cir. 2004) (en banc)).

### 2. Application

Carmenatty contends that the use of his GPS positioning information amounted to a search without either a warrant or probable cause. He asserts that the impermissible search directly led to his arrest in a place where he was temporarily residing and thus had a reasonable expectation of privacy. Because Carmenatty was apprehended on the basis of an arrest warrant only, unaccompanied by a search warrant, he contends that the arrest was illegal. See United States v. Graham, 553

F.3d 6, 12 (1st Cir. 2009). He claims that any subsequent statements made by him were tainted by those compounded constitutional violations.

In its opposition, the Government responds that the legality of defendant's arrest "has no legal bearing on the admission" of his subsequent statements.[1] The government contends that the defendant's argument is negated by the Supreme Court's decision in Harris. It points out that Carmenatty does not dispute that he was arrested pursuant to a valid outstanding arrest warrant. Consequently, there was probable cause to arrest defendant and any subsequent statements made by him outside of the subject residence are not barred by the exclusionary rule.

The government has the better argument but, giving defendant the benefit of the doubt, the Court will assume, for these purposes, that Carmenatty's arrest was improper in the absence of a search warrant. See Weems, 322 F.3d 18, 23 & n.3 (1st Cir. 2003). Such an assumption does not alter the fact that defendant was arrested on an outstanding warrant, meaning that it is undisputed that probable cause for his arrest existed. Carmenatty admits as much when he states that "[a]

---

[1] The government does not concede that its use of Carmenatty's GPS location information or his resulting arrest were illegal but instead asserts that even if either did violate his Fourth Amendment rights, such a violation (or violations) has no bearing on defendant's motion to suppress.

6

team of agents took [him] into custody pursuant to the ... arrest warrant."

The government is thus correct in asserting that the Harris decision is controlling. Accordingly, the legality of defendant's arrest at his friend's residence "has no bearing on the admissibility of the statements he made after being taken into custody." United States v. De La Cruz, No. 13-10022-RGS, 2014 WL 1796654, at *1 (D. Mass. May 5, 2014). Regardless of the legality of his arrest, the existence of probable cause for his arrest rendered his continued detention lawful once he was removed from the residence. Id.; United States v. Villegas, 495 F.3d 761, 770 (7th Cir. 2007). Any statements that followed at the police station were not subject to the Fourth Amendment's exclusionary rule. Villegas, 495 F.3d at 771.

The same result is warranted even if the Court momentarily credits defendant's argument that the collection and use of his GPS location was an impermissible search. See Crawford, 372 F.3d at 1057 (noting application of the Harris decision to statements made after any allegedly illegal search); United States v. Duchi, 944 F.2d 391, 395 (8th Cir. 1991) (same). Moreover, any illegality of that search would have been sufficiently attenuated by (1) the Miranda warnings given to Carmenatty at the police station and (2) the good faith reliance of the agents on the Magistrate Judge's approval to gather and utilize the GPS

7

data from defendant's cellular phone. See United States v. Paradis, 351 F.3d 21, 32, 34 (1st Cir. 2003).

**C. Fifth Amendment Challenge**

Next, Carmenatty moves to suppress his statements as a result of the government's alleged failure to demonstrate a knowing and voluntary waiver of his Miranda rights.

**1. Legal Standard**

The obligation to warn an individual of his Miranda rights arises when that individual has been "taken into custody." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Once an individual has been given proper Miranda warnings, the burden remains on the government to establish, by a preponderance of the evidence, that the individual both (1) knowingly and (2) voluntarily waived his/her Fifth Amendment rights. Berghuis v. Thompkins, 560 U.S. 370, 383-84 (2010). Absent a showing of a valid waiver, subsequent statements made by the individual cannot be used against him/her. Id. at 382.

The government can show that the individual waived such Miranda rights either expressly or impliedly. Id. at 384. An individual, who has both received and understood the Miranda warnings, impliedly waives his/her right to remain silent by making an uncoerced statement to the police. Id.

### 2. Application

Carmenatty contends that his statements were made before the ATF agents secured a valid waiver of his Miranda rights. In particular, he argues that the government has failed to establish that he knowingly waived his right to remain silent.

Carmenatty's argument is conclusory and wholly unsupported by fact or law. The Court finds ample evidence in the record that Carmenatty's actions at the police station served as an implied waiver of his Miranda rights.

A knowing Miranda waiver is one that is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Bezanson-Perkins, 390 F.3d 34, 39 (1st Cir. 2004) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). Here, Carmenatty was given Miranda warnings three times, twice orally and once in writing. Not only did he sign the Miranda warnings form, but he also orally signified to one of the ATF agents that he understood his rights. He nevertheless proceeded to speak voluntarily with the agents. See United States v. Plugh, 648 F.3d 118, 128 (2d Cir. 2011) ("consistent with Berghuis, we are satisfied that with a full understanding of his ... rights [defendant] acted in a manner inconsistent with their exercise when he chose to begin speaking with custodial agents").

Furthermore, this was not Carmenatty's first experience at the Chelsea Police station. He was arrested in 2008 and was orally given two sets of Miranda warnings. He was also provided with a copy of the same Miranda warnings form that he signed in 2011, and he signed then as well. That prior experience further supports a finding that defendant's decision to speak with ATF agents was knowing, voluntary and served as an implied waiver of his Miranda rights.

### D. Evidentiary hearing

An evidentiary hearing is required only if the moving party

> makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.

United States v. Jimenez, 419 F.3d 34, 42 (1st Cir. 2005). Criminal defendants are not entitled to evidentiary hearings as a matter of course. See United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990) ("a criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion").

Defendant has not made the requisite threshold showing and his motion to suppress evidence will accordingly be denied without a hearing.

**ORDER**

For the foregoing reasons, defendant Carmenatty's motion to suppress (Docket No. 96) is **DENIED.**

**So ordered.**

                                                  /s/ Nathaniel M. Gorton
                                                  Nathaniel M. Gorton
                                                  United States District Judge

Dated January 28, 2015